UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                                           CRIMINAL NO. 3:19-CR-206-RGJ
*Electronically Filed*

BOBBY LEE SMITH
CYNTHIA ALLEN                                            DEFENDANTS

## TRIAL MEMORANDUM

Comes now the United States of America, by counsel, and submits the following pretrial memorandum, in accordance with the trial Order of the Court.

### Statutes Involved and Elements of Offenses

**A. Charges**

Count 1 of the Superseding Indictment charges the defendants with retaliating against a witness by killing in violation of 18 U.S.C. §§1513(a)(1)(A) and 2.  [DN 87].  Count 2 charges the defendants with Tampering with a Witness by Killing in violation of 18 U.S.C. §§1512(a)(1)(A), 1512(a)(1)(C) and 2.  [Id.].  Count 3 charges the defendants with Killing a Person Aiding a Federal Investigation in violation of 18 U.S.C. §§1121(a)(2) and 2. [Id.].  Count 5 charges defendant Allen with Solicitation to Commit a Crime of Violence in violation of 18 U.S.C. §§ 373(a) and 2.  [Id.].

B. <u>Statutes</u>

- **18 U.S.C. § 1513(a)(1)(A) – Retaliating Against a Witness**
    - The defendant killed or attempted to kill another person
    - With the intent to retaliate against any person for:
        - the attendance of a witness or party at, or
        - any testimony given at, or
        - any record, document, or other object produced by a witness at
    - An official proceeding

- **18 U.S.C. § 1512(a)(1)(A) – Tampering with a Witness by Killing to prevent their attendance at an official proceeding**
    - The person described in the indictment was [a witness] [scheduled to be a witness] in this Court ;
    - The Defendant [killed] [tried to kill] the witness;
    - The Defendant acted knowingly with the intent to prevent the witness from attending or testifying at a proceeding in this Court.

- **18 U.S.C. § 1512(a)(1)(C) – Tampering with a Witness by Killing to prevent their communication to law enforcement**
    - The defendant killed or attempted to kill a person;
    - The defendant was motivated by a desire to prevent the communication between any person and law enforcement authorities concerning the commission or possible commission of an offense;
    - The offense was actually a federal offense; and
    - The defendant believed that the person in above might communicate with the federal authorities.

- **18 U.S.C. § 1121(a)(2) -Killing a Person Aiding a Federal Investigation**
    - (a)   Whoever intentionally kills--
    - (2) any person assisting a Federal criminal investigation, while that assistance is being rendered and because of it,

- **18 U.S.C. § 373(a) Solicitation to commit a crime of violence**

    - The defendant intentionally solicited, commanded, induced, or otherwise endeavored to persuade another person to engage in conduct.
    - The conduct constituted a federal felony that had as an element the use, attempted use, or threatened use of physical force against property or against the person of another.
    - The circumstances must be strongly corroborative of the inten**t.**

### Statement of Facts

On November 27, 2012, Cynthia Allen organized a staged motor vehicle accident where two vehicles intentionally hit each other. A.P. and her sister, A.M., along with six other passengers were in the vehicle (Unit 1) that intentionally struck another vehicle (Unit 2). Allen then directed the participants to seek therapy at a chiropractic clinic where she worked, which was owned by Co-defendant Lesa Andrade. A.P. received treatment at the clinic. During this time period, Allen left Andrade's clinic and began working at Injury Rehab Specialists (IRS), a pain management clinic owned by Kelly Lenning.[1] Allen then directed the participants in the November 27, 2012, staged accident to treat at IRS. A.P. began treating at IRS. On January 17, 2014, a search warrant was executed at IRS located at 5751 Preston Highway, STE 101, Louisville, Kentucky. The search warrant affidavit relied on a confidential source, in part, to establish probable cause. A.P. was the confidential source.

Following the search warrant, Allen began a campaign to harass and intimidate A.P. It was clear that Allen suspected A.P. was the confidential source. A.P. began working at Charter Communications in May 2013. Allen then obtained employment at Charter Communications in

---

1 Lenning pled guilty to health care fraud and aggravated identity theft and was sentenced to 20 months in prison.

April 2014 in order to harass A.P. Allen began harassing A.P. at work. A.P. reported the harassment to the HR department. A.P. reported in emails to her supervisor and the HR department that, "I don't think security at work would help with individuals taunting/intimidating me into not speaking.. My attorney has already said it will happen and I basically have to walk around feeling and putting up with the actions of others like this until or after all the court dates."

In August 2014, Allen pled guilty in state court to obtaining or attempting to obtain a controlled substance by fraud or deceit. Allen's original charge of trafficking in a controlled substance was dismissed. [14-CR-0470]. On October 8, 2014, A.P. testified in front of a federal Grand Jury and implicated Allen in the staged automobile accident and in unlawfully distributing controlled substances from IRS. A.P. also testified that Lesa Andrade owned the chiropractic clinic where Allen worked, Andrade was involved in staging automobile accidents, and the chiropractic clinic made money by staging automobile accidents. A.P. also testified that Andrade paid Allen for bringing patients to the office. On June 17, 2015, Allen was charged federally with conspiracy to commit health care fraud in Case No. 3:15-CR-58-TBR.

On March 2, 2016, Sin Hernandez (aka Cynthia Allen) sent a Facebook message to C.E. (a passenger in the staged motor vehicle accident organized by Allen) stating, "BC I found out who's telling and giving statements.. I got a letter over the weekend from my lawyer had to see him yesterday and gotta go back today". A few minutes later, Allen sent another message to C.E. stating, "Well I'm waiting on lil bobby[2] to come over this morning first". Following this

---

2  Lil Bobby is referring to co-defendant Bobby Smith.

Facebook message, Allen and Andrade began attempting to locate A.P. Allen texted Smith A.P.'s address in order to stalk A.P., and ultimately, kill her.

On May 3, 2016, the parties conducted a further proceeding in which the United States notified Cynthia Allen, through counsel, that the Petite Waiver had been granted and the United States was presenting a Superseding Indictment charging her with unlawful distribution, and aggravated identity theft, adding a mandatory minimum sentence. [3:15-CR-58-TBR; DN 132]. Five days later, on May 8, 2016, Allen's brother[3], Bobby Smith, laid in wait at A.P.'s apartment complex. He attacked her as she, her fiancé, and her son were walking to their apartment. A.P. ran but fell, and Smith pounced, pistol-whipped A.P., and then shot her execution style in front of her 8-year-old child. This heinous, brutal murder was carried out in front of A.P.'s eight-year-old child on Mother's Day in front of their residence at Cooper Creek Apartments on Creek Pointe Terrace. On June 7, 2016, Allen was charged by Superseding Indictment with conspiracy to commit health care fraud, conspiracy to unlawfully distribute controlled substances, social security fraud and aggravated identity theft. [3:15-CR-58-TBR; DN 39]. On May 15, 2017, Allen pled guilty to conspiracy to commit health care fraud (November 27, 2012, staged accident), conspiracy to unlawfully distribute controlled substances (pill distribution from IRS), social security number theft, and aggravated identity theft (using another's social security number and another's DEA number to obtain a controlled substance from a pharmacy). [3:15-CR-58-TBR; DN 83].

---

3 Allen made a party admission to the United States Probation officer in case number 3:15-CR-58-TBR. (See DN 100-PSR). Smith also admitted in his interview with law enforcement following his arrest in this case that Cynthia Allen was his sister. Additionally, Bobby Smith makes a party admission to United States Probation during the preparation of the pretrial services report in this case that Allen is his sister.

Text messages between Cynthia Allen and Bobby Smith leading up to the murder show a joint venture to locate A.P. For instance, Bates number USA-019912 sent by Cynthia Allen (Sis C; 502-345-2030)[4] on March 11, 2016, to her brother, Bobby Smith (502-468-5562) stated, "**Creek Point Terrace Apartments .. Might be apt 6 .. its on Preston highway silver charger**". (emphasis added). This text message was located on the phone that Smith dropped at the murder scene, which was recovered from underneath A.P.'s leg. A.P. lived at Cooper Creek Apartments on Creek Pointe Terrace, and this is where A.P. was brutally murdered in the parking lot on May 8, 2016. Additionally, A.P. drove a silver Dodge Charger, which was found at the murder scene. Further corroboration is the fact that the phone found underneath A.P.'s leg at the murder scene contains defendant Bobby Smith's photograph (selfie). Also, the phone found underneath A.P.'s leg at the murder scene contains Bobby Smith's DNA.

Another text message (Bates number USA-019876) was sent by Cynthia Allen (Sis C) on March 14, 2016, to her brother, Bobby Smith. This text message was located on the phone that Smith dropped at the murder scene, which was recovered from underneath A.P.'s leg. The text message reads, "**Wtf ok I wonder if she's moved or in protective custody. Call me later.** (emphasis added).

There are numerous text messages from Lesa Andrade to Cynthia Allen regarding finding and killing A.P. For example, on March 1, 2016, at 6:55 PM, Andrade texted Allen (502-345-2030), "**If they both come up missing is that 5k each? We have got to try.**" (emphasis added). On March 1, 2016, at 7:13 PM, Andrade texted Allen, "**What does your brother think you should do?**" (emphasis added). On March 1, 2016, at 7:29 PM, Andrade texted

---

[4] Cynthia Allen lists this phone number as her home number in her Charter Communication records.

Allen, "All 10 won't testify against you because those other people are going to be afraid to be labeled as snitches on the street they know that's a death sentence."   On March 1, 2016, at 7:32 PM, Andrade texted Allen, "Also if three are on your side that leaves v if they can't say anything about you then there's [A.P.] and her sister I'm sure they can be persuaded not to testify against you."   On March 1, 2016, at 7:34 PM, Andrade texted Allen, "3 is on your side 5 don't know you that leaves [A.P.], her sister, and Daddy O am i understanding this correctly."   On March 2, 2016, at 10:03 PM, Andrade texted Allen, "Who's momma was killed by a ambulance order something like that when they stepped off the curb."[5]   On March 2, 2016, at 11:48 PM, Andrade texted Allen, "Baby we will find her."

On March 3, 2016, at 3:12 PM, Andrade texted Allen, "Idea it's a long shot but it's a thought if she has a home phone and its listed in her name you can call information and they will give you the address."   On March 4, 2016, at 3:52 PM, Andrade texted Allen, "I just learned that if you know someone who works in the insurance business they can run her information and get her address immediately. This was on Steve Harvey Show."   On March 12, 2016, at 1:18 PM, Andrade texted Allen, "Baby I am afraid also for you! Your babies need you although they are going to give you a lot of probation time. I don't think they are going to take you away from your babies because of your past Plus I don't think **that b**** is going to have the nerve to testify because she knows she'll die if she does.**" (emphasis added).   On March 12, 2016, at 1:23 PM, Andrade texted Allen, "Do you have her tag info?"   On March 12, 2016, at 1:28 PM, Andrade texted Allen, "If we have a tag number I can tell the attorney that I have it from a hit-and-run and he will get the information for me you know Brian is easy."   On March 12, 2016, at

---

5  A.P.'s and A.M.'s mother was run over and killed while walking in downtown Louisville.

1:33 PM, Andrade texted Allen, "**We will find her unless they have her ass in protective custody**." (emphasis added).   On March 14, 2016, at 10:27 AM, Andrade texted Allen, "How does [A.P.] spell her name I'm trying to pull up her rental property so I need to make sure I have it correct."   On March 14, 2016, at 10:28 AM, Andrade texted Allen, "And how old is she?" On March 14, 2016, at 10:37 AM, Andrade texted Allen, "He found found her, now he is going to pull up the information and call me back before 11. I told him that if he found the correct address that he would get a blessing."   On March 14, 2016, at 10:53 AM, Andrade texted Allen, "What is her sister name I will ask about her ? She will lead to her."   On May 3, 502-759-4893 texted Andrade's phone, "It's cyn. Call me back." Then on May 8, 2016, Andrade texts 502-759-4893, "My house is clean! Lol happy mothers day!" Also on May 8, 2016, at 6:03 AM (the morning of the murder), Andrade texted Allen (502-345-2030) at the usual number, "Happy mothers day too you." One minute later, Andrade texted Allen, "What are you doing up?"

## Evidentiary Issues

### *Rule 404(b) Evidence*[6]

The United States maintains that the evidence listed below is relevant admissible evidence pursuant to Rule 401 and 402 that is admissible to prove the elements of the charged crimes.   The proffered evidence is also *Res Gestae* and/or evidence that is inextricably intertwined with the charged conduct. *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (finding that *res gestae* evidence is "background evidence" that "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete

---

[6] The United States endeavored to be exhaustive in its notification.   It may introduce all or some of the proffered evidence.   It may also introduce additional proof at trial.   This list is not intended to be exhaustive of the proof the United States intends on presenting at trial.

the story of the charged offense" and thus does not implicate Rule 404(b)); *United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995) ("Rule 404(b) is not applicable where the challenged evidence is "inextricably intertwined" with evidence of the crime charged."   Alternatively, the United States maintains that the evidence listed below is admissible under Fed. R. Evid. 404(b) for permitted, rather than prohibited, uses [7] (i.e. motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).   *See* Fed. R. Evid. 404(b); *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1993); *United States v. Ismail*, 756 F.2d 1253, 1259 (6th Cir. 1985); *United States v. Dabish*, 708 F.2d 240, 242 (6th Cir. 1983).

### Categories of Uncharged and Additional Conduct

**I.**   ***Criminal acts supporting the underlying fraud case based on staged accidents.***

The United States will introduce evidence that outlines the underlying health care fraud/staged accident prosecution.   The evidence will be offered primarily in the form of testimony from Detective Ruoff.   Det. Ruoff will also admit the underlying accident report from the staged accident.   Underlying court documents such as the initial Indictment, Superseding Indictment, Further Proceedings Orders and certified transcripts may also be introduced to show Allen's knowledge, state of mind and timing of the killing.   Lesa Andrade may also testify as to the underlying criminal conduct, and specifically, Allen organizing the staged motor vehicle accident.   As referenced in the United States' motion to admit evidence based on the forfeiture by wrongdoing doctrine (DN 228), the United States also intends to introduce statements made

---

[7] Without conceding that such evidence is subject to Fed. R. Evid. 404(b), the United States tenders this filing as Notice of Intent in accordance with Fed. R. Evid. 404(b)(2).

by A.P. in which she discussed the structure and operation of the underlying fraud scheme. As stated above, these acts are background evidence and do not fall under 404(b). The United States is providing notice out of an abundance of caution.

## II.    *Acts constituting threats and intimidation directed at A.P.*

The United States intends to offer evidence showing a pattern of harassing and intimidating conduct by Cynthia Allen directed at A.P.

A.    The United States will offer evidence that shows Allen began working at Charter Communications on April 7, 2014, intending to harass and intimidate A.P. because Allen knew A.P. was cooperating against her. The harassment at Charter began immediately after Allen began her employment based on anticipated testimony from R.T., A.P.'s fiancé who also worked at Charter at the time. R.T. will testify that he personally observed a phone conversation between Allen and A.P. and also witnessed the present sense impressions and excited utterances of A.P. discussing harassment in real time over the phone. A.P. was on the phone with R.T. when Allen used her car to block A.P.'s egress from the Charter parking lot. Such statements will be admissible as exceptions to the hearsay rule pursuant to FRE 803(1) and (2) and 804(b)(6).

B.    The United States will offer testimony and evidence discussing Charter Communications' response to threats made by Allen to A.P. A.P.'s complaints/concerns to Charter regarding Allen stalking and intimidating her will also be admitted through FRE804(b)(6). It is anticipated that witnesses from Charter will testify about their response to A.P.'s complaints about the threats and the corrective steps they took to alleviate the potential situation in the workplace including separating Allen and A.P. by changing their break times.

Charter witnesses will also testify about discussions with Allen regarding staying away from A.P. at work. In addition, Charter witnesses will testify to the documented anxiety and mental health treatment sought by A.P. as a result of Allen's harassment. (See Charter records in discovery for all potential testimony).

      C.     The United States will offer evidence that Allen personally made efforts to confirm that Pressley was cooperating against her. It is anticipated that A.M., A.P.'s sister and a participant in a staged accident, had conversations with Allen. During those conversations, Allen accused A.P. of cooperating with the police and being a "rat." These statements are admissible as non-hearsay statements of a party opponent under FRE 801(d)(2)(A).

      D.     The United States will offer evidence in the form of Facebook postings by Allen intended to harass and intimidate A.P.

*Certifications/Introduction of Exhibits*

The United States intends to introduce numerous records (accident report, phone records, Facebook records, Charter Communication Personnel Files, jail calls and Court documents) through agents. These have either been turned over in discovery with certifications complying with Rule 902 or FRE 902 certifications will be provided before trial.

*Summary Charts*

The United States intends to use summary charts detailing and organizing the government's evidence. *See* Fed. R. Evid. 1006; *See also United States v. Scales*, 594 F.2d 558 (6th Cir. 1979); *United States v. Bray*, 139 F.3d 1104 (6th Cir. 1998); *Epstein v. United States*, 246 F.2d 563 (6th Cir. 1957); *Barber v. United States*, 271 F.2d 265 (6th Cir. 1959); *United States v. Bartone*, 400 F.2d 459 (6th Cir. 1968); *United States v. Rath*, 406 F.2d 757 (6th Cir.

1969). Specifically, summary charts will be used to show the following: 1) Historical Cell Site Analysis for telephone number 502-468-5562; 2) summary of telephone tolls and contact frequency between 502-468-5562, 502-851-6899, 502-345-2030, 404-481-8999, and 404-481-9000; and 3) timeline summarizing sequencing of pertinent events with underlying court appearances, A.P./Allen Charter employment, Allen Facebook messages, and telephone tolls. All of the supporting records and data were provided in discovery.

*Experts*

The United States provided defense counsel with documents used to support the United States' expert disclosures. Defendant Smith filed a notice of expert disclosure. The United States will provide a rebuttal expert disclosure this week.

*Jenks Materials*

All witness interviews and grand jury testimony will be turned over to defendants before trial begins.

**Known or Reasonably Anticipated Potential Trial Problems**

*Witness Logistics*

The United States intends to call dozens of witnesses, including experts. Given the volume of witnesses in this case, schedules are unpredictable. Although the United States will do its best to keep witnesses flowing, there may be disruption in the flow of witnesses based on schedules.

**Proposed Jury Instructions**

Filed separately.

## **Proposed Voir Dire**

The United States submits the following questions for inclusion in the Court's voir dire of the jury panel:

1. Do any of you have any conscientious objection, religious belief, philosophical belief or mental reservation such that you could not, in good faith, sit as a juror in a criminal case and return a verdict of guilty against a person charged with a crime, no matter what the circumstances, even if you believe from all of the evidence that the United States has proved its case beyond a reasonable doubt?

2. Are any of you suffering from any physical limitation, disability, or illness that would make it difficult for you to serve as an alert juror?

    Are any of you currently under the care and treatment of a doctor?

    Are any of you scheduled to see a doctor within the next four weeks?

3. Do any of you have any business or work obligations that would make it difficult for you to give your full attention to the evidence during this trial?

4. Has any member of the panel ever served as a juror in a civil or criminal case?

    If so, were you the foreperson of the jury?

    Was a verdict reached?

    If not, why not?

    Would this experience affect your ability to render an impartial verdict in this case, based on the evidence presented in this trial?

5. Has any member of the panel ever had a "personal interest" in the outcome of a criminal case? The term personal interest means either: (a) You made an appearance as a witness in the case; or (b) You had a close friend or relative charged with a crime.

    If so, what was the nature of the interest?

    Would this affect your ability to be a fair and impartial juror in this case?

6. Has any member of the panel been charged or convicted, or sentenced to probation for a state or federal crime regardless of whether there was a final adjudication of guilt was entered?

      Do any of you have a family member or close friend who has been charged or convicted, or sentenced to probation for a state or federal crime?

      Have any of you been the subject of a federal or state criminal investigation?

      Do any of you have any case pending at this time in State Court, Federal Court, Tax Court, or with any federal agency or appeal authority?

7.    Do any of you have any claim pending against the United States or any agency or department of the United States including the Internal Revenue Service at this time?

      If so, would that affect your impartiality in this case?

      Do any of you have a family member or close person a friend who has ever sued or been sued by the United States or one of its agencies?

      If so, would that affect your impartiality in this case?

8.    Has any member of the panel ever had an unpleasant experience with the criminal justice system, either as a victim, defendant, or witness?

      If so what type of experience?

      Did this experience affect your opinion of the criminal justice system?

      If it did, how did it affect your opinion?

      Would that experience affect your ability to be a fair and impartial juror in this case?

9.    Have you, your spouse, your close friends or your relatives ever worked in law enforcement?   If so, please specify who, when, where and in what capacity.

10.    Has anyone here ever had their automobile, home, or business searched by law enforcement agents?

      Would this experience affect your ability to render a fair and impartial verdict based on the evidence in this case?

11.    Do each of you understand that in Federal Court you are here to determine the guilt or innocence of the defendant from the evidence and that the punishment provided by law for the offense charged in the indictment is a matter for the Court to consider, and should not be considered by the jury in any way while arriving at your verdict?

>Will any of you be unable to reach a verdict because you are not allowed to also consider the punishment?

12.     During this trial you may be asked to consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating that the defendant is either guilty or not guilty. The law makes no distinction between the weight you give to direct and circumstantial evidence. It only requires that you weigh all the evidence and be convinced of the defendant's guilt beyond a reasonable doubt before he can be convicted.

>Would any of you require the United States to establish the guilt of the defendant using only direct evidence because you feel you could not consider circumstantial evidence?

13.     The United States has the burden of proving the defendant's guilt beyond a reasonable doubt. While this is a heavy burden, it is not an impossible burden. The United States is not required to prove the defendant's guilt beyond all possible doubt, or beyond a shadow of a doubt. Do each of you understand that it is not necessary that the defendant's guilt be proven beyond all possible doubt, or a shadow of doubt?

>Is there any among you who would hold the United States to a higher burden of proof than proof beyond a reasonable doubt?

14.     The law does not require the United States to call as witnesses all persons who may have knowledge of the matters in issue at this trial, or to produce as exhibits all papers or other items mentioned in evidence.

>Would anyone vote to acquit the defendant solely because the United States does not call every person who may have knowledge of the matters in issue or does not produce as exhibits all the papers and other items mentioned in the evidence?

15.     You will hear testimony from several state and federal forensic scientists in this case.   Would you require any specific type of forensic evidence to be presented before you could find the defendant(s) guilty beyond a reasonable doubt?

16.     Is there any specific type of evidence you would require the United States to prove before you could find the defendant(s) guilty beyond a reasonable doubt?

17.     A defendant is presumed to be innocent until proven guilty beyond a reasonable doubt. The defendant may not be called as a witness by the United States and is not required to testify in a criminal case because the burden of proof is entirely on the United States. The defendant is entitled to testify if he wishes but if he elects to do so, he is not entitled to any more credibility than other witnesses merely because he is the defendant.

> Is there any member of the panel who would automatically give a defendant more credibility than other witnesses merely because he is the defendant?
>
> On the other hand, if the defendant elects not to testify, which is the defendant's right, the jury may not speculate about what his testimony might have been had he testified.
>
> Would any of you speculate about the testimony of a non-testifying defendant?

18. Does anyone here distrust the United States government?

19. Does anyone feel the federal government's power has expanded too far?

20. Does anyone here believe the Department of Justice is heavy handed or unfair?

21. Does anyone here have any issues or misgivings with the United States government?

22. Do any of you have a bias or prejudice against either the defendant or the United States that would affect your ability to render a fair and impartial verdict?

23. Do any of you have any reason, not asked today, as to why you believe you could not be a fair and impartial juror in this case?

24. Do any of you have a reason why you do not want to sit as a juror in this case that has not yet been raised?

25. At the conclusion of all the evidence and after the lawyers have given their closing arguments, the Court will instruct you on the rules of law that apply to this case and that must be followed in reaching your verdict.   Is there anyone who would not follow the Court's instructions on the rules of law, if they disagreed with them or due to sympathy for the defendant, bias against a witness, or prejudice, or for some other reason?

26. The defendants are charged with their roles in the murder of A.P. which occurred May 8, 2016, Mother's Day. The allegation is that A.P. was murdered because of her status as a witness in a federal criminal case.   Have you read, heard, or received any information about this case from any newspaper, television, radio, magazine, internet?

> If so, did you form an opinion about this case?

27. Did you know A.P. or anyone associated with her?

28. Are you familiar with the murder location:   Creek Point Terrace Apartments, located off Preston Highway in Louisville?

29.     Did you or anyone you are associated with work at Charter Communications in Louisville, between 2013 and 2015?

30.     The federal case in which A.P. was a witness involved a fraudulent staged auto accident scheme in 2012 through 2014.   Have you read, heard, or received any information about this case from any newspaper, television, radio, magazine, internet or other media?

       If so, did you form an opinion about that case?

31.     Are you familiar with a business known as Injury Rehab Specialist formerly located at 5751 Preston Highway, Ste. 101 in Louisville?

       If so, how?

32.     Are you familiar with a business known as Howard Chiropractic Health & Wellness located in Louisville?

       If so, how?

Exhibit List

Filed separately.

Proposed Witness List

Filed with the Court for the Court's *in camera* review.

                            Respectfully submitted,

                            MICHAEL A. BENNETT
                            United States Attorney

                            */s/ Joseph Ansari*
                            Joseph R. Ansari
                            Robert B. Bonar
                            Assistant United States Attorneys
                            717 West Broadway
                            Louisville, Kentucky 40202
                            (502) 582-5911 (tel)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                             */s/ Joseph Ansari*
                                             Joseph R. Ansari
                                             Assistant United States Attorney