UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                    Plaintiff

v.                                                             Criminal Action No. 3:19-cr-206-RGJ

BOBBY LEE SMITH                                                             Defendant

\* \* \*

**OMNIBUS MEMORANDUM OPINION & ORDER**

Defendant Bobby Lee Smith ("Smith"), by counsel, filed two trial related motions. In the first motion Smith objects to the United States proposed use of Fed. R. Evid. 404(b) "Other Crimes, Wrongs or Acts" evidence. [DE 362]. The United States responded [DE 377]. In the second motion Smith makes seven objections to the United States's proposed exhibits. [DE 372]. The United States responded [DE 376]. For the reasons below and those stated on the trial transcript, Smith's objection to the proposed use of 404(b) evidence [DE 362] is **DENIED** without prejudice, Smith's objection's to Exhibits 2, 4, 5, 6, 11A-L, 12, 13, 34A-C, and 22 are **DENIED,** and his objection to Exhibit 27 A-C is **GRANTED**. [DE 372].

**I.     OBJECTION TO 404(b) "OTHER CRIMES, WRONGS OR ACTS" EVIDENCE.**

    **A.     Background**

Defendant Bobby Lee Smith ("Smith") is charged with three counts: count one, retaliating against a witness by killing; count two, tampering with a witness by killing; and count three, killing a person aiding a federal investigation. [DE 87]. The superseding indictment alleges that Smith killed A.P. because she was assisting a federal criminal investigation and alleges that the crime took place with the use of a firearm. [*Id*. at 270, 273].

On December 31, 2024, the United States provided Smith with notice of their intent to introduce evidence that could be characterized as Rule 404(b) evidence, despite their belief that it was admissible. [DE 362-1]. This evidence falls into two categories. First, the United States seeks to introduce evidence that Smith regularly possessed firearms prior to the killing of A.P. The United States intends on offering the testimony of three witnesses, Cynthia Allen, Teddy Ingram and Neresha Parker, who will testify that Smith had previously frequently possessed firearms.[1] [DE 362-2 at 3169-70]. Second, the United States seeks to admit evidence of witness tampering by an associate of Smith. "[I]t is anticipated that Lonet Peavy, a close associate of Smith's, visited Cynthia Allen while she was in federal pre-trial detention, in an attempt to persuade Allen to offer untruthful testimony about the charged crimes." [*Id.*]. According to the United States this matter is currently under investigation. [*Id.*]. Smith objects to both under Rule 404(b). [DE 362].

**B.     Standard**

While evidence of other bad acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). Before admitting evidence under Rule 404(b), the Court must (1) find "sufficient evidence that the 'other acts' took place," (2) find that "those 'other acts' are admissible for a

---

[1] The United States also intended to offer photographs of firearms that had been saved on electronic devices seized from Smith after the killing and testimony from FBI agents who located evidence of firearms possession during the search of Smith's apartment, 9641 Lamborne Blvd. Apt. 3 on November 21, 2019. This evidence includes 45 caliber ammunition, a magazine, a rifle sight, and a copy of the book titled, "The Shooter's Bible." [DE 362-1 at 3167]. The United States stated in its response that it has decided not to seek admission of the photographs of firearms or evidence of firearm possession found during the search of Smith's apartment. [DE 377 at 3613]

proper purpose," and (3) determine that the evidence is not "more prejudicial than probative." *See United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004); *see also* Fed. R. Evid. 104(a).

"[A]ll evidence . . . must meet the minimal standards of relevancy articulated in Federal Rules of Evidence 401 and 403." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 (6th Cir. 2007); *see also United States v. Gibbs*, 797 F.3d 416, 421 (6th Cir. 2015) (discussing Fed. R. Evid. 404(b) evidence). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**C. Discussion**

    1.    <u>Evidence of Prior Possession of Firearms</u>

The United States seeks to admit evidence that Smith regularly possessed firearms prior to the killing of A.P. The United States asserts that such evidence would be admissible for the proper purposes of proving Smith's identity as the killer, and Smith's opportunity to carry out the killing. [DE 362-1 at 3167 (citing *United States v. Woodley*, 727 F. App'x 136, 139 (6th Cir. 2018) (evidence relating to prior firearm possession was directly related to opportunity to have carried out the offense against Hall on the night of the shooting)]. The United States anticipates testimony from witnesses Cynthia Allen, Teddy Ingram, and Neresha Parker that Smith routinely carried firearms and that they had personally observed Smith in possession of handguns prior to the killing of A.P. [DE 362-1 at 3167]. Smith objects to the introduction of this evidence, claiming it is

improper 404(b) evidence. Smith asserts that (1) there is no proper purpose for the admission of this testimony, and (2) the evidence is "more prejudicial than probative."[2]

### i.    404(b): Sufficient Evidence

Smith does not factually dispute that he was in regular possession of firearms prior to the crime occurring, he only argues against the admissibility of the nontestimonial evidence that the government has since chosen not to present at trial. [DE 377 at 3613]. In order to admit evidence that Smith owned firearms the court must find "sufficient evidence that these 'other acts' took place." *Lattner*, 385 F.3d 947 at 955. The Sixth Circuit permits the use of witness testimony to provide sufficient evidence of prior firearm possession and other bad acts. *Woodley*, 727 F. App'x at 139 (upholding the admission of 404(b) evidence of prior firearm possession using testimonial evidence of three witnesses). The United States intends to present the testimony of three witnesses, Cynthia Allen, Teddy Ingram and Neresha Parker, that they regularly saw Smith in possession of firearms prior to the killing of A.P. [DE 362-2 at 3169-70]. This testimonial evidence would be sufficient "other acts" evidence of Smith's regular possession of firearms before the alleged crime occurred.

### ii.    404(b): Proper Purpose

In their letter to Smith the United States argues that evidence of Smith's prior gun ownership is admissible to prove both Smith's identity, and that Smith had the opportunity to carry out the crime. [DE 362-1 at 3167]. Under Fed. R. Evid. 404(b)(2) both identity and opportunity

---

[2] In their form letter notifying Smith of potential 404(b) evidence the United States argues briefly that this evidence is admissible under the res gestae exception. [DE 362-1 at 3166]. The res gestae exception is limited and cannot be "broadly applied to completing a story but must specifically involve past acts that establish a close connection." *United States v. Brown*, 888 F.3d 829, 838 (6th Cir. 2018). General evidence of a past firearm possession lacks the required causal, temporal, and spatial connection to qualify as res gestae evidence. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). As a result, the Court will evaluate this evidence through the standard 404(b) analysis.

are permitted purposes for use of 404(b) evidence. In *United States v. Woodley,* the court held that "evidence intimating that the defendant previously and regularly possessed a firearm was admissible for a proper purpose, specifically, the defendant's opportunity to commit the shooting at issue in this case. *Woodley*, 727 F. App'x at 139.

Smith argues that *Woodley* does not support the admission of evidence of firearm possession in this case as none of the offenses charged against Smith "require the United States to show that Mr. Smith knowingly (or otherwise) possessed ammunition or firearms." [DE 362 at 3162]. According to Smith this means that evidence of possession of a firearm is not related to an element of this case which precludes it from being admitted for opportunity. [*Id*.]. However, this is inaccurate as all three counts against Smith, retaliating against a witness by killing, tampering with a witness by killing, killing a person aiding a federal investigation [DE 87], require killing as an element. The killing in this case is alleged to have taken place with a firearm, and as such the possession of a firearm is directly relevant to proving an element at issue in all three counts brough against Smith.

Furthermore, *Woodley* never directly mentions the "directly related to an element" standard Smith focuses on. *Woodley*, 727 F. App'x 136. The actual standard used to evaluate opportunity is whether the "evidence used to establish opportunity is evidence that shows access to or presence at the scene of the crime or the possession of distinctive or unusual skills or abilities employed in the commission of the crime charged." *United States v. Peete*, 781 F. App'x 427, 442 (6th Cir. 2019) (quoting *United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996)). Courts in the Sixth Circuit routinely hold that firearm possession falls into this category. *See United States v. Woods*, 613 F.2d 629, 636 (6th Cir. 1980) (in prosecution for armed robbery, evidence that defendant possessed firearms is admissible to show defendant's opportunity to commit crime charged),

5

*Woodley*, 727 F. App'x at 139 (testimonial evidence relating to Woodley's prior firearm possession was directly related to Woodley's opportunity to have carried out the offense against on the night of the shooting). This testimonial evidence of Smith's prior possession of firearms can be admitted for the proper purpose of proving opportunity to carry out the killing of A.P.

Smith also objects to the United States' use of bad act evidence to prove identity. Smith asserts that prior act evidence can only be used to establish identity when the acts present "an unusual and distinctive pattern constituting a 'signature.'" [DE 362 at 3162 (quoting *United States v. Whitt*, 752 F. App'x 300, 305 (6th Cir. 2018)]. Prior bad act evidence is probative if it is sufficiently similar to the charged crimes to establish the defendant's pattern, modus operandi, or "signature." *United States v. Mack*, 729 F.3d 594, 602 (6th Cir. 2013) (quoting *United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010)); *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006); *United States v. Hopper*, 436 F. App'x. 414, 420–21 (6th Cir. 2011). However, the crimes or acts need not "be identical in every detail." *Perry*, 438 F.3d at 648 (quoting *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir. 1982)). The United States has not provided information on how this evidence will prove identity and the court cannot decide whether the prior firearm possession and the killing at issue establish a clear pattern or signature necessary to prove identity. The United States is permitted to admit evidence for purposes of opportunity.

      iii.      *403: Unfair Prejudice*

Having determined that evidence of Smith's prior firearm possession is admissible to show opportunity under Fed. R. Evid. 404(b), we now consider whether the probative value of such evidence is "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Evidence of gun ownership is highly probative in this case as A.P. was killed by a firearm. Although evidence of firearm possession is prejudicial, it is not unduly so, especially in light of its

6

necessity in proving the underlying charges. Evidence of Smith's prior firearm possession is admissible to prove opportunity. Smith's objection is **DENIED**.

        2.        <u>Evidence of Witness Tampering</u>

The United States intends to offer evidence of two attempts by Smith to tamper with a potential witness in this case. First, the United States anticipates testimony that Lonet Peavy, "a close associate of Smith's," visited Cynthia Allen while she was in federal pre-trial detention in an attempt to persuade Allen to offer untruthful testimony about the charged crimes. [DE 362-1 at 3167]. Second, through an oral motion made during the jury conference held on January 13, 2024, the United States seeks to admit evidence of attempts by Smith to tamper with a second potential witness, Pamala Haines. The United States alleges that Smith sent threatening chirps[3] messages to Pamala Haines, informing her that Smith knew where she worked and where she would be. [DE 377 at 3164]. Smith argues that prior bad acts of an associate cannot be introduced against Smith unless the United States can show that Smith caused the associate to perform the acts at issue and provide that evidence. [DE 362 at 3163].[4]

        i.        *404(b): Sufficient Evidence*

Smith objects to the United States' request to admit evidence of witness tampering of Cynthia Allen on two grounds. First, that the United State cannot offer evidence of prior bad acts of an associate unless the United States can show that Smith caused the associate to perform the

---

[3] "Chirps" are a form of communication used by inmates to send messages from prison to parties located outside the facility, similar to text messages. [DE 377 at 3614].
[4] The United States again argues that this evidence is admissible background evidence under the res gestae exception. [DE 362-1 at 3166]. To qualify as res gestae or background evidence, evidence must "specifically involve past acts that establish a close connection." *United States v. Brown*, 888 F.3d 829, 838 (6th Cir. 2018). Evidence of witness tampering well after the initial crime occurred cannot constitute a past act qualifying as background evidence. As a result, the Court will evaluate this evidence through the standard 404(b) analysis.

acts. Smith further contends that United States does not offer sufficient evidence to prove that Smith himself engaged in witness tampering. [DE 362-1 at 3167]. The United States has not put any evidence on record to show that Smith was engaged in witness tampering, and the United States admits that "the matter is currently under investigation." To pass step one of Fed. R. Evid. 404(b) the United States will need to submit sufficient evidence to the court to show that Smith tampered with a witness through his associate or submit a proffer of evidence outside the presence of the jury. Smith's objection to the United States' request to admit evidence of witness tampering as to Cynthia Allen will be **DENIED** without prejudice so the objection can be raised again at trial after the United States has had an opportunity to present this Court with sufficient evidence of witness tampering.

Smith objected on the record to the United States' oral motion to admit evidence of witness tampering as to Pamala Haines, arguing that there is nothing suggestive or intimidating about the contact Smith made with the potential witness. The United States provided the log of these chirp messages to the court. Smith sent numerous messages and account fund requests to the potential witness from January 14, 2024, to January 8, 2025. [United States Exhibit 42]. The tone of these messages was threatening and aggressive. One message sent on January 6, 2025, stated, "Every1 knows U were working @T the SALVATION ARMY-- GOODWILL cause of YOUR communitY service-WELL ill cu-YAW at trial the 14th/next tuesday," clearly expressing that Smith knew where the potential witness could be found and would see her at the trial in a threatening manner. [Exhibit 42 at 13]. The evidence provided by the United States shows the messages were threatening and provide this court with sufficient evidence of witness tampering to pass the first step of the 404(b) test.

        *ii.*     *404(b): Proper Purpose*

In their response to Smith's objections the United States argues that evidence of witness tampering by Smith is admissible to show consciousness of guilt. [DE 377 at 3614]. Smith does not argue that the United States lacks a proper purpose in admitting 404(b) evidence of witness tampering. [DE 362 at 3163]. Under Fed. R. Evid. 404 (b): "[e]vidence of witness tampering was admissible as an 'other purpose' under Rule 404(b) because it 'tends to establish consciousness of guilt any inference as to the character of the spoliator.'" *United States v. Poulsen*, 655 F.3d 492, 508–09 (6th Cir. 2011). *See, e.g., United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (collecting cases) (holding evidence that a defendant threatened and attempted to bribe a witness admissible under Fed. R. Evid. 404(b)). The United States possesses a proper purpose in admitting evidence of witness tampering.

### iii.    403: Unfair Prejudice

In his objection Smith does not argue that admission of this evidence is unfairly prejudicial under Fed. R. Evid. 403. Unfair prejudice in the Fed. R. Evid. 403 context "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision in an improper basis." *United States v. Poulsen*, 2008 WL 4326461, at *7 (S.D. Ohio Sept. 22, 2008), aff'd, 655 F.3d 492 (6th Cir. 2011) (quoting *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006)). The Sixth Circuit has explained that the probative value of a defendant's witness tampering or spoliation attempt is that it indicates consciousness of guilt. As such, any inference that an attempt to bribe or tamper with a witness evidences a guilty conscience is not unfair prejudice. *United States v. Lawson*, 535 F.3d 434, 442 (6th Cir. 2008), *as amended* (Oct. 9, 2008). The Court finds that the substantial probative value of evidence of witness tampering is not outweighed by the risk of unfair prejudice.

The evidence of prior bad acts of witness tampering as to Cynthia Allen could become admissible at trial depending on the evidence submitted by the United States. However, at this stage, the Court lacks sufficient evidence to determine that witness tampering of Cynthia Allen took place. Smith's objection [DE 362] will be **DENIED** *without prejudice*. To admit this evidence, the Court would need a sufficient showing or proffer of evidence outside the presence of the jury to ensure the United States can meet its burden to show, as discussed, that there is sufficient evidence of witness tampering by Smith. On second count of witness tampering as to Pamala Haines, the Court has found sufficient evidence and a proper purpose to admit evidence of witness tampering. As such, the United States oral motion to admit evidence of witness tampering is **GRANTED**.

## II.   OBJECTIONS TO EXHIBITS [DE 372]

In the second motion Smith makes seven objections to proposed exhibits by the United States. [DE 372]. Across the seven objections Smith objects to the admission of Exhibits 2, 4, 5, 6, 11A-L, 12, 13, 34A-C, 22, and 27 A-C. [DE 372]. These pretrial objections to exhibits are essentially motions in limine raises by Smith. Even if a motion in limine is denied, this Court may return to its previous ruling at trial and has the discretion to alter or amend a prior in limine ruling.

### A.   Standard

Defendants have made various pretrial objections to the United States Exhibit List. [DE 372]. Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence in limine pursuant to their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[P]reliminary questions" are often are determined "pretrial . . . in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173

F.3d 966, 970 (6th Cir. 1999); *see also* Fed. R. Evid. 103, 104. The "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 810 (N.D. Ohio 2002) (citing *Luce,* 469 U.S. at 41 n.4). This posture is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). When this Court issues a ruling in limine, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984)). Thus, even where a motion in limine is denied, the court may return to its previous ruling at trial "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239). Likewise, the court has discretion to alter or amend a prior in limine ruling at trial. *Luce,* 469 U.S. at 41–42.

    **B.**    **Discussion**

        1.    <u>Exhibit 2</u>

Smith objects to the admission of United States Exhibit 2, Certified Kentucky Uniform Police Traffic Collision Report dated November 27, 2012, as inadmissible hearsay evidence. [DE 372 at 3407]. According to their response the United States no longer seeks to admit the traffic accident report into evidence. [DE 372 at 3405]. The objection is **DENIED** *as moot.*

        2.    <u>Exhibit 4 and 5</u>

Smith objects to the admission of Exhibits 4 and 5, the Charter employment records of A.P. and Cynthia Allen. [DE 372 at 3405]. Smith contends these documents are inadmissible hearsay not within an exception. [*Id.*]. In *Martin v. Funtime, Inc.*, 963 F.2d 110 (6th Cir. 1992), the Sixth

11

Circuit clarified that a business's personnel files were admissible under the business record hearsay exception, finding that "it is certain the personal [sic] records would be admissible under Fed. R. Evid. 803(6) as business records" after meeting the requirements of the business record exception. Human resource investigations and reports are also routinely upheld by the courts. *Weinstein v. Siemens*, No. 2:07-CV-15000, 2010 U.S. Dist. LEXIS 123541, at *8 (E.D. Mich. Nov. 22, 2010) (citing *Brauninger v. Motes*, 260 F. App'x 634, 636–639 (5th Cir. 2007) (finding that investigation and documentation by a human resource manager of employee complaints of sexual harassment were part of the human resource manager's general duties and therefore their reports were admissible as business records). These records are relevant as they provide evidence of the harassment of A.P. by Cynthia Allen which the United States alleges was part of a joint venture by Allen and Smith to locate and kill A.P. The Charter employment records are admissible under the Rule 803(6) hearsay exception. Smith's objection is **DENIED**.

3. Exhibit 6

Smith objects to the introduction of Exhibit Six, Certified Facebook records for username Sin Hernandez. Smith contends that the United States intends to admit voluminous and excessive documentation and should only be permitted to admit relevant pages. [DE 372 3408]. The United States only provided the Court with two pages of Facebook documents that it seeks to have admitted for trial and confirmed in their response that these are the only pages they seek to have admitted. [DE 376 at 3606]. Since the United States is not seeking to admit thousands of pages Smith's objection is **DENIED** *as moot.*

4. Exhibits 11 A-L, 12, 13 and Exhibit 34-A-C

Smith objects to the introduction of Exhibits 11 A-L, Photos taken during the search of 9641 Lamborne Blvd., Apt. 3, Exhibit 12, Photos seized from 9641 Lamborne Blvd., Apt. 3; and

12

Exhibit 13, Names and phone numbers on yellow paper seized from 9641 Lamborne Blvd., Apt. 3. [DE 372 at 3408-09]. According to Smith the three years between the killing of A.P. and the search that uncovered this evidence makes the recovered evidence irrelevant and inadmissible under Fed. R. Evid. 403. [*Id.*].

According to Fed. R. Evid. 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and if "the fact is of consequence." Relevance is a "low bar." *United States v. Wilder*, 87 F.4th 816, 819 (6th Cir. 2023) (quoting *United States v. Potter*, 927 F.3d 446, 452 (6th Cir. 2019)). The relevance of similar incidents does depend in part on their proximity in time to the incident at issue in the case before the court. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 298 (6th Cir. 2007) *(*quoting *Hicks v. Six Flags Over Mid-America*, 821 F.2d 1311, 1315-16 (8th Cir. 1987)). Courts have discretion in determining whether evidence is proximate in time and have previously found eighteen months to be reasonably proximate. *Id.*, *see Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). The Court finds that this evidence was found sufficiently proximate in time and is relevant to the underlying killing as the evidence was seized from a search incident to Smith's arrest after a multiyear continuous investigation conducted by the FBI. Evidence uncovered during the arrest of a suspect is highly relevant to the case and outweighs what risk of jury confusion and unfair prejudice is created by the lapse in time between the crime and subsequent search.

Smith makes similar objections to the introduction of Exhibit 34-A-C, surveillance photos of Smith taken on August 14, 2019, arguing that the three-year time lapse renders these photos irrelevant. [DE 372 at 3410]. As stated previously, the Rule 401 bar for evidence is low, and the court has already found evidence uncovered shortly after the surveillance at issue was sufficiently proximate in time to the killing to be admitted. Surveillance of Smith prior to his arrest was part

13

of the FBI's continuous investigation and process for securing an indictment. [DE 376 at 3609]. This evidence is relevant to show that law enforcement was thorough in identifying Smith as their suspect and can help refute claims that the FBI failed to consider other suspects or properly identify Smith. [*Id*.]. The surveillance also show's Smith wearing similar clothing to what some witnesses have identified the killer as wearing the night of the killing, which is relevant as it provides further identifying information that could link Smith to the killing. [*Id*.].

Arguments addressing the lapse in time between the killing and the discovery of evidence are better brought challenging their weight than admissibility. *See Smith v. Toyota Motor Corp*., 105 F. App'x 47, 53 (6th Cir. 2004) (Concerns about evidence acquired from a scene that was not examined for a full 16 months following the accident go to the weight of the testimony, not its admissibility). This is a matter best addressed on cross-examination and any potential prejudice of the lapse in time is minimal and mitigated by the ability to examine witnesses on this matter. Evidence is relevant under Fed. R. Evid. 401 and not unfairly prejudicial. Fed. R. Evid. 403. Smith's objection is **DENIED.**

      5.    Exhibit 22

Smith objects to the introduction of Exhibit 22, a video of the scene at 8901 Creek Way Court performed by the LMPD Crime Scene Unit, as graphic and unfairly prejudicial. [DE 372 at 3409]. Smith asserts that the focus on A.P.'s dead body serves no probative purpose, and if any existing purpose would be outweighed by its unfairly prejudice impact. [*Id*]. "[E]vidence is not unfairly prejudicial simply because it is gruesome or disturbing." *United States v. Boyd*, 640 F.3d 657, 667-68 (6th Cir. 2011). Images of a deceased victim are not inherently gruesome or prejudicial, and even when images of bodies and crime scenes are graphic or gruesome in nature, their introduction generally does not violate a defendant's right to a fair trial. *Jamison v. Collins*,

100 F. Supp. 2d 647, 704 (S.D. Ohio 2000), aff'd, 291 F.3d 380 (6th Cir. 2002), as amended on denial of reh'g (July 11, 2002) (citing *United States v. Brady*, 595 F.2d 359, 361–62 (6th Cir. 1979) (upholding admissibility under Federal Rule of Evidence 403 of photographs that depicted bank robbery victims lying in pools of their own blood)); *see also United States v. Boise*, 916 F.2d 497, 504 (9th Cir. 1990) (finding that the admission of the autopsy photograph of a murdered child was not an abuse of discretion); *Jones v. Butler*, 864 F.2d 348, 368 (5th Cir. 1988) (concluding that the photographs of a rape-murder victim's bloody genitals were not so inflammatory as to deny due process).

The video in Exhibit 22 is relevant as it provides a unique perspective of the crime scene and surroundings not provided by other photos and focuses on A.P.'s body for less than 40 seconds of the two-minute video. [DE 371 at 3404]. The image of a cell phone alleged to belong to Smith is visible under A.P.'s leg at the two minute and four-second mark of the video which could be relevant in connecting Smith to the crime scene. Although the video in Exhibit 22 does show A.P.'s dead body and some blood, it does not rise to the level of gruesome or gory images that would introduce unfair prejudice, particularly in light of its relevance. Smith's Motion is **DENIED.**

6. Exhibit 27 A-C

Smith objects to the admission of Exhibit 27 A, which contain clips of wearable video surveillance from Sgt. C. Grider depicting two individuals checking A.P.'s pulse and performing CPR. [DE 372 at 3409-10]. Smith alleges the later portions of this video depicting the performance of CPR are irrelevant and unfairly prejudicial. [*Id*.]. "[E]vidence is not unfairly prejudicial simply because it is gruesome or disturbing." *Boyd*, 640 F.3d at 667–68. However, the court is permitted to reduce the prejudice to the defendant by prohibiting needlessly graphic and cumulative evidence *See, e.g.*, U*nited States v. Deitz*, 577 F.3d 672, 691 (6th Cir. 2009), *see also United States v. Myers*,

15

280 F.3d 407, 414 (4th Cir. 2002) (noting that in a murder case, the court sought to minimize prejudice to the defendant by not allowing the government to show inflammatory photographs depicting the body or bloody scene).

The portion of the video in Exhibit 27A that Smith objects to is over four minutes long. [DE 371 3404]. The video focuses on A.P. close up as an officer performers CPR while waiting for medical assistance. [*Id*.]. Watching a long and graphic recording of CPR performed on a deceased victim is unnecessarily cumulative and not particularly probative given other videos and images available. The court finds these portions of the video beyond the initial showing of CPR being administered fail under Fed. R. Evid 403. The earlier portion of video before CPR is relevant as it accurately depicts the crime scene and surroundings at the time of the killing before the scene is secured and investigated. Smith's objection is **GRANTED in part,** and the latter portion of Exhibit 27A depicting CPR being performed on A.P.'s dead body is inadmissible and **DENIED in part** as the remainder of the video in Exhibit 27A is admissible.

### III. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, IT IS ORDERED as follows:

- Smith's objection to the admission of evidence of prior gun ownership [DE 362] is **DENIED**;

- Smith's objection to the admission of evidence of witness tampering [DE 362] is **DENIED** without prejudice;

- United States oral motion to admit evidence of witness tampering [DE 377] is **DENIED**;

16

- Smith's objection to Exhibit 2, Certified Kentucky Uniform Police Traffic Collision Report dated November 27, 2012 [DE 372] is **DENIED** *as moot*;

- Smith's objection to Exhibits 4, Certified Personnel file for A.P. from Charter Communications, and 5, Certified Personnel file for Cynthia Allen from Charter Communications [DE 372] are **DENIED**.

- Smith's objection to Exhibit 6, Certified Facebook records for username Sin Hernandez [DE 372] is **DENIED** *as moot*;

- Smith's objection to Exhibits 11 A-L, Photos taken during the search of 9641 Lamborne Blvd., Apt. 3, Exhibit 12, Photos seized from 9641 Lamborne Blvd., Apt. 3, and Exhibit 13, Names and phone numbers on yellow paper seized from 9641 Lamborne Blvd., Apt. 3. [DE 372] is **DENIED**;

- Smith's objection to Exhibit 34-A-C, surveillance photos of Smith taken on August 14, 2019, is **DENIED;**

- Smith's objection to Exhibit 22, Video of scene at 8901 Creek Way Court performed by the LMPD Crime Scene Unit [DE 372] is **DENIED;**

- Smith's objection to Exhibit 27 A, the first of two clips of wearable video surveillance from Sgt. C. Grider, is **GRANTED in part** as to the portions of the video depicting CPR, and **DENIED in part** as to the remainder of the video.

*Rebecca Grady Jennings, District Judge*
United States District Court

January 17, 2025

17